UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JEMMY LEE STURGIS,

                Plaintiff,

   -against-

SUFFOLK COUNTY JAIL, SUFFOLK COUNTY POLICE,
SUFFOLK COUNTY D.A., P.O. JOHN DOE, P.O. WILLIE
WOE, P.O. TOMMY TOE, P.O. JANE DOE,

                Defendants.
----------------------------------------------------------------X

**ORDER**
12-CV-5263 (SJF)(ETB)

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E D N Y

★   JAN 22 2013   ★

LONG ISLAND OFFICE

FEUERSTEIN, District Judge:

I.    Introduction

On October 17, 2012, incarcerated *pro se* plaintiff Jemmy Lee Sturgis ("plaintiff") filed a civil rights complaint in this Court pursuant to 42 U.S.C. § 1983 ("Section 1983") against defendants, Suffolk County Jail ("the Jail"), Suffolk County Police ("SCPD"), Suffolk County D.A. ("the District Attorney") and four (4) unidentified Suffolk County Police Officers allegedly employed at the 6th Precinct ("the 'John Doe' officers") (collectively "defendants"), accompanied by an application to proceed *in forma pauperis*. Since plaintiff's financial status, as set forth in his declaration in support of his application to proceed *in forma pauperis*, qualifies him to file his complaint without prepayment of the filing fees, the application to proceed *in forma pauperis* is granted. However, for the reasons set forth below, plaintiff's claims against the Jail, the SCPD and the District Attorney are dismissed.

II.    The Complaint

Plaintiff alleges that shortly after "a supposed scizophrenic [sic] co-defendant" implicated him in a crime on January 9, 2010, the four (4) "John Doe" officers "'barge[d]' into" his wife's apartment, at which he did not reside, arrested him without a warrant and transported him to the

Sixth Precinct. (Compl., ¶ IV). According to plaintiff, he was arraigned and detained for more than twenty (20) days and the case was dismissed in his favor after the District Attorney stated that "'There is no evidence to support the charges[.]'" (Id. (emphasis omitted)). Plaintiff claims psychological and emotional distress, as well as "financial losses [and] property losses, (Compl., ¶ IV.A), and seeks compensatory and punitive damages in the amount of thirty-eight thousand dollars ($38,000.00). (Compl., ¶ V).

III. Discussion

A. Standard of Review

Under both the Prison Litigation Reform Act, 28 U.S.C. § 1915A, and the *in forma pauperis* statute, 29 U.S.C. § 1915(e)(2), a district court must dismiss a complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B). See Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007) (finding both Section 1915 and Section 1915A to be applicable to a prisoner proceeding *in forma pauperis*).

It is axiomatic that district courts are required to read *pro se* complaints liberally, see Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)); Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011), and to construe them "to raise the strongest arguments [that they] suggest[]."Jabbar v. Fischer, 683 F.3d 54, 56 (2d Cir. 2012) (quotations, alterations and citations omitted). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations in the complaint." Harrington v. County of Suffolk, 607 F.3d 31, 33 (2d Cir. 2010); see also Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Nevertheless, a complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed.2d

929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests."Erickson, 551 U.S. 89, 127 S.Ct. at 2200 (quotations and citation omitted);see also Anderson News, LLC v. American Media, Inc., 680 F.3d 162, 182 (2d Cir. 2012), cert. denied by Curtis Circulation Co. v. Anderson News, LLC, 2013 WL 57139 (Jan. 7, 2013) (accord). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"Ashcroft, 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"Id. (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955); see also Gallop v. Cheney, 642 F.3d 364, 368 (2d Cir. 2011) (accord). "Factual allegations must be enough to raise a right to relief above the speculative level, * * * on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."Twombly, 550 U.S. at 555-56, 127 S.Ct. at 1959; see also Starr v. Sony BMG Music Entertainment, 592 F.3d 314, 321 (2d Cir. 2010) (accord). The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Ashcroft, 556 U.S. at 678, 129 S.Ct. at 1949;see also Wilson v. Merrill Lynch & Co., Inc., 671 F.3d 120, 128 (2d Cir. 2011) (accord).

B. Section 1983

Section 1983 of Title 42 of the United States Code provides, in relevant part:

> "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."

To state a claim under Section 1983, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir.

3

1994)); see also Rehberg v. Paulk, 132 S. Ct. 1497, 1501-02, 182 L. Ed. 2d 593 (2012).

      1.     Claims Against the Jail and SCPD

"[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued." See Davis v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002); see also Robischung-Walsh v. Nassau County Police Department, 699 F. Supp. 2d 563, 565 (E.D.N.Y. 2010), aff'd, 421 Fed. Appx. 38 (2d Cir. Apr. 29, 2011). Since the Jail and SCPD are administrative arms of the County of Suffolk ("the County"), they lack the capacity to be sued. See, e.g. Carthew v. County of Suffolk, 709 F. Supp. 2d 188, 195 (E.D.N.Y. 2010); Davis v. Riverhead Correction Facility, No. 11-cv-5667, 2011 WL 6131791, at * 2 (E.D.N.Y. Dec. 6, 2011). Accordingly, the complaint is dismissed in its entirety with prejudice as against the Jail and SCPD. However, since plaintiff is proceeding *pro se*, his complaint will be construed as being brought against the County.

"[A] municipality [or municipal entity] can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality [or municipal entity]." Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." Id.; see also Connick v. Thompson, 131 S.Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (holding that under Section 1983, governmental bodies are not vicariously liable for their employees' actions); Los Angeles County, California v. Humphries, 131 S. Ct. 447, 452, 178 L. Ed. 2d 460 (2010) ("[A] municipality cannot be held liable solely for the acts of others, e.g., *solely* because it employs a tortfeasor." (emphasis in original) (quotations and citation omitted)); Monell v. Department of Social Services of City of

New York, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). To prevail on a Section 1983 claim against a municipal entity, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008); see also Connick, 131 S.Ct. at 1359 ("Plaintiffs who seek to impose liability on local governments under Section 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (quoting Monell, 436 U.S. at 691, 98 S.Ct. 2018)); Humphries, 131 S.Ct. at 452 ("[A] municipality may be held liable when execution of a government's *policy or custom* . . . inflicts the injury." (emphasis in original) (quotations and citation omitted)).

"A municipal policy may be pronounced or tacit and reflected in either action or inaction." Cash v. County of Erie, 654 F.3d 324, 333 (2d Cir. 2011), cert. denied, 132 S. Ct. 1741, 182 L. Ed. 2d 528 (2012). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 131 S.Ct. at 1359. In addition, municipal liability can be established "by showing that a policymaking official ordered or ratified the employee's actions– either expressly or tacitly." Jones, 691 F.3d at 81. "Thus, a plaintiff can prevail against a municipality [or municipal entity] by showing that the policymaking official was aware of the employee's unconstitutional actions and consciously chose to ignore them." Id. To establish such deliberate indifference, "a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." Id. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id. (quotations and citation omitted). "[D]eliberate indifference

5

requires a showing that the official made a conscious choice, and was not merely negligent." Id.; see also Cash, 654 F.3d at 334.

"[D]eliberate indifference may be inferred where the need for more or better supervision to protect against constitutional violations was obvious * * * but the policymaker failed to make meaningful efforts to address the risk of harm to plaintiffs." Cash, 654 F.3d at 334 (quotations, alterations and citations omitted). Moreover, "[i]n limited circumstances, a [municipal entity's] decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of Section 1983." Connick, 131 S. Ct. at 1359. "To satisfy [Section 1983], a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." Id. (internal quotations, alterations and citation omitted). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Id. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id. at 1360.[1]

To state a claim for municipal liability under Section 1983, a plaintiff must allege more than that a municipal policy or custom exists. See Santos v. New York City, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012). "Rather, a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." Id.

Since the complaint is devoid of any factual allegations tending to support an inference

---

[1] Although the Supreme Court recognized "a narrow range of * * * hypothesized single-incident liability" based upon "an obvious need for some form of training," Connick, 131 S.Ct. at 1361, this case does not fall within that narrow and "rare" range of cases, particularly because plaintiff does not allege a complete lack of training of NCCC personnel or that NCCC staff had an "utter lack of an ability to cope with constitutional situations" that existed in the hypothesized single-incident case. Id. at 1363.

6

that a municipal policy or custom existed that caused the alleged constitutional deprivations of which plaintiff complains, it fails to state a Section 1983 claim against the County. See, e.g., White v. St. Joseph's Hospital, 369 Fed. Appx. 225, 226 (2d Cir. Mar.10, 2010) (affirming *sua sponte* dismissal of Section 1983 claim for the plaintiff's failure "to allege that any of the allegedly unconstitutional actions were taken pursuant to an official policy or custom, as is required to state a § 1983 claim against a municipality."); see generally City of Waterbury, 542 F.3d at 37–41. Plaintiff has not alleged: (1) the existence of a formal policy which is officially endorsed by the County, the Jail or the SCPD; (2) actions taken or decisions made by County, Jail or SCPD policymaking officials which caused the alleged violations of his civil rights; (3) a County, Jail or SCPD practice so persistent and widespread as to practically have the force of law; or (4) a failure by County, Jail, or SCPD policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with their employees. Accordingly, plaintiff's claims, as construed to be against the County, are dismissed.

### a. Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." Nevertheless, "[l]eave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)); see also Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008). "[W]hen addressing a *pro se* complaint, a district court should not dismiss without

granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002) (quotations and citation omitted); see also Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Accordingly, plaintiff is granted leave to file an amended complaint against the County correcting the pleading deficiencies in his complaint, **provided that any such amended complaint is filed on or before February 25, 2013**, or the complaint will be deemed dismissed with prejudice as against the County.

2. Claims Against the District Attorney

Plaintiff's claims seeking damages as against the District Attorney are dismissed in their entirety with prejudice because the District Attorney is entitled to absolute prosecutorial immunity from such claims. The Second Circuit has held that:

> "Absolute immunity affords 'complete protection from suit,' Harlow v. Fitzgerald, 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), because it gives 'public officials entrusted with sensitive tasks a protected area of discretion within which to carry out their responsibilities,' Barr v. Abrams, 810 F.2d 358, 361 (2d Cir.1987), so that they will not feel 'constrained in making every decision by the consequences in terms of [their] own potential liability in a suit for damages,' Imbler v. Pachtman, 424 U.S. 409, 424-25, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The doctrine's nature 'is such that it "accords protection from ... any judicial scrutiny of the motive for and reasonableness of official action,"' Shmueli v. City of New York, 424 F.3d 231, 237 (2d Cir.2005) (quoting Robinson v. Via, 821 F.2d 913, 918 (2d Cir.1987)), even where the challenged conduct was motivated by a wrongful motive or even malice, Bernard v. County of Suffolk, 356 F.3d 495, 503 (2d Cir.2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985))."

In re NYSE Specialists Securities Litigation, 503 F.3d 89, 95-96 (2d Cir. 2007).

Under federal law, prosecutors enjoy absolute immunity from liability in suits seeking monetary damages for acts carried out in their prosecutorial capacities. See Imbler, 424 U.S. at 430, 96 S. Ct. 984; Parkinson v. Cozzolino, 238 F.3d 145, 150 (2d Cir. 2001). Absolute

8

prosecutorial immunity applies, *inter alia*, when a prosecutor prepares to initiate and pursues a prosecution, see, e.g. Peay v. Ajello, 470 F.3d 65, 68 (2d Cir. 2006), or engages in administrative duties that are directly connected with the conduct of a trial, Van de Kamp v. Goldstein, 555 U.S. 335, 129 S.Ct. 855, 861-2, 172 L.Ed.2d 706 (2009); see also Warney v. Monroe County, 587 F.3d 113 (2009) ("a prosecutor enjoys absolute immunity even when doing an administrative act if the act is done in the performance of an advocacy function.")

Once absolute immunity attaches, it "attaches to [the prosecutor's] function, not the manner in which he performed it. * * * Accordingly, a prosecutor's motivation, and whether preferable alternatives to the actions taken were available, are irrelevant." Parkinson, 238 F.3d at 150 (internal quotations and citations omitted); see also Shmueli, 424 F.3d at 237 (holding that once the court determines that the challenged prosecution was not clearly beyond the prosecutor's jurisdiction, the prosecutor is shielded from liability for damages for commencing and pursuing the prosecution, regardless of any allegations that his actions were undertaken with an improper state of mind or improper motive).

Since plaintiff does not allege that the challenged actions of the District Attorney were undertaken in the complete absence of all jurisdiction, and all of plaintiff's claims against the District Attorney seek damages based upon conduct involving, or relating to, the initiation and prosecution of a criminal action against plaintiff, the District Attorney is entitled to absolute immunity from all of plaintiff's claims against him. Accordingly, the complaint is dismissed in its entirety with prejudice as against the District Attorney pursuant to 28 U.S.C. §§ 1915(e) and 1915(A)(b).

### 3. Claims Against the "John Doe" Officers

The United States Marshal Service cannot serve the "John Doe" officers without more information regarding the identity of those defendants. Since the Second Circuit has held that district courts must provide incarcerated *pro se* litigants with reasonable assistance in investigating the identity of "John Doe" officers, see Valentin v. Dinkins, 121 F.3d 72 (2d Cir. 1997) (*per curiam*), the Clerk of the Court shall serve copies of the complaint and this Order upon the Suffolk County Attorney, who shall attempt to ascertain the full names and service address(es) of the police officers who were involved in the incident described in the Complaint and provide such information to the Court **within two (2) weeks from the date that this Order is served upon him**. The Suffolk County Attorney need not undertake to defend or indemnify the "John Doe" officers at this juncture, as this Order merely provides a means by which plaintiff may identify and properly serve the "John Doe" defendants as instructed by the Second Circuit in Valentin. Once the information is provided by the Suffolk County Attorney, plaintiff's complaint shall be deemed amended to reflect the full names of the "John Doe" officers, summonses shall be issued and the United States Marshal Service shall serve those defendants.

## IV. Conclusion

For the reasons set forth above, plaintiff's application to proceed *in forma pauperis* is granted, the complaint is *sua sponte* dismissed with prejudice as against the Jail, the SCPD and the District Attorney pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and the complaint is dismissed with prejudice as against the County, **unless plaintiff files an amended complaint in accordance with this Order on or before February 25, 2013**. The Clerk of the Court shall send a copy of the Complaint and this Order to the Suffolk County Attorney and the Suffolk County Attorney shall attempt to ascertain the full names and service address(es) of the

10

"John Doe" officers involved in the incident described in the Complaint and **to produce such information to the Court within two (2) weeks from the date that this Order is served upon him.** Once the information is provided by the Suffolk County Attorney, plaintiff's complaint shall be deemed amended to reflect the full names of the "John Doe" officers, summonses shall be issued and the United States Marshal Service shall serve those defendants.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

**SO ORDERED.**  s/ Sandra J. Feuerstein

/ Sandra J. Feuerstein
United States District Judge

Dated: January 22, 2013
Central Islip, New York